AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### District of Kansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH DROPBOX USER<br>JIMMYLOVESAIMEE@GMAIL.COM (See Attachment A) | )<br>)<br>)<br>)<br>)<br>)<br> Case No.  22-MJ-_6306__-01-KGG |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
INFORMATION ASSOCIATED WITH DROPBOX USER JIMMYLOVESAIMEE@GMAIL.COM (See Attachment A)

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252/2252A | Offense relating to the Sexual Exploitation of Children |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Travis Putrah, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed **telephonically.** ~~in my presence~~.

Date: **Nov 4, 2022**

_____
*Judge's signature*

City and state:  Wichita, Kansas

Honorable Kenneth G. Gale, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
DROPBOX USER
**JIMMYLOVESAIMEE@GMAIL.COM**
THAT IS STORED AT PREMISES
CONTROLLED BY DROPBOX, INC.
1800 OWENS ST., STE. 200,
SAN FRANCISCO, CA 94158

Case No. 22-M-6306-01-KGG

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Travis C. Putrah, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent ("SA") with Homeland Security Investigations ("HSI") and

has been so employed since September 2019.

    a.   As a requirement for employment as an HSI Special Agent, I successfully
completed a twelve-week Criminal Investigator Training Program ("CITP")
located at the Federal Law Enforcement Training Center ("FLETC") in Glynco,
Georgia. At the conclusion of CITP, your affiant also completed an additional
twelve-week HSI Special Agent Training ("HSISAT") Academy. As part of the
training at FLETC, your affiant received extensive instruction in the areas of
Customs law, Immigration law and Criminal law.

    b.   Prior to my tenure as a Special Agent with HSI, your affiant was employed as a
Border Patrol Agent with the Department of Homeland Security ("DHS") from
2005 to 2019. From 2015 to 2018, your affiant was assigned to the Federal
Bureau of Investigations' ("FBI") Indian Country Task Force in Bemidji,
Minnesota. Your affiants' duties included investigating crimes of violence, to
include death and assaults with deadly weapons; sexual assaults of juveniles,
human trafficking, illegal trafficking of firearms and explosives; the manufacture,
sale, and distribution of controlled substances; trafficking of child pornography;
money laundering; arson; and the disruption/dismantling of violent gangs.

c. From 2018 to September 2019, I was assigned to the HSI Task Force in Wichita, Kansas. While serving as an HSI TFO, your affiant was responsible for investigating federal violations of the trafficking of controlled substances; the production and sale of fraudulent documents; violations of immigration law; the trafficking of child pornography; and the theft of intellectual property.

d. I am currently assigned to the Kansas Internet Crimes Against Children (ICAC) Task Force in Wichita, Kansas. The ICAC task force includes investigators from multiple law enforcement agencies in Wichita, Kansas and throughout the state of Kansas. As part of my duties, I routinely communicate with experts in the field of computers, computer forensics, and Internet investigations.

**PURPOSE OF THE AFFIDAVIT**

2.     I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Dropbox Inc. ("Dropbox"), an electronic service provider headquartered at 1800 Owens St., Ste. 200 San Francisco, CA 94158. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Dropbox to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3.     The statements in this Affidavit are based in part on information provided by Kik, the National Center for Missing and Exploited Children ("NCMEC"), other law enforcement officers and on my investigation of this matter. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included each and every fact known to me concerning this investigation. Your affiant has set forth only the facts that they

believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A(a)(l) (transportation of child pornography); and 18 U.S.C. § 2252A(a)(2)(A) (receipt or distribution of child pornography); and 18 U.S.C. § 2252A(a)(5)(B) (possession of and access with intent to view child pornography); and 18 U.S.C. § 2252A (production of child pornography); are presently located on a device obtained from LYNN, more specifically described in Attachment A.

## DEFINITIONS

4.      The following definitions apply to this Affidavit and Attachment B:

a.  "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

b.  "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.  "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

d.  "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(l).

e.  "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units; internal

and peripheral storage devices such as fixed disks; external hard drives; "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer; and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

f.  "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

g.  "Hyperlink," as used herein, refers to an item on a web page or in a mobile application which, when selected, transfers the user directly to another location in a hypertext document or to some other web page or (part of) a mobile application.

h.  "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

i.  An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

j.  The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

k.  "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

l.   "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

m.   "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; ( c) masturbation; ( d) sadistic or masochistic abuse; or ( e) lascivious exhibition of the anus, genitals, or pubic area of any person.

n.   A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks; RAM; "thumb," "jump," or "flash" drives; CD/DVDs; and other magnetic or optical media.

o.   "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address. URLs are made of letters, numbers, and other symbols in a standard form. People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a::web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

p.   "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

5.     On or about July 9, 2022, MediaLab/Kik Messenger ("Kik") submitted CyberTip Report ("CTR") 128580616 to the National Center for Missing and Exploited Children ("NCMEC"). Kik reported it had detected a user uploading multiple files of apparent child pornography using their service.

6.     Kik identified the user as:

a.   Username:  jimbolives72; ESP User ID:  jimbolives72_hfl;

b.   Email address:  jimmyl@hatchettauto.com;

c.   First name:  Jimmy and Last name: "L".

7.     Approximately 42 files were uploaded to Kik from the above account.  The following are descriptions of several of those files:

a.   File #1 "2a225fed-4104-9465-891e2d8329a1" is a video file approximately 1 minute 50 seconds in length.  The video shows an adult male having anal

intercourse with a prepubescent white female child on a bed.  The file was uploaded/shared via private chat message by jimbolives72_hfl on July 7, 2022 at 20:45:16 UTC from IP address 174.71.138.186 (Cox Business).

b.  File #2 "14a230ab-7879-452d-8b35-d9ef5dc5dae6" is a video file approximately 1 minute 32 seconds in length.  The video shows and adult female performing oral sex on a prepubescent white female child.  The child is laying on a bed.  The file was uploaded/shared via private chat message by jimbolives72_hfl on June 30, 2022 at 00:58:21 UTC from IP address 76.222.228.30 (AT&T U-verse).

c.  File #3 "953c8648-553c-4a3f-9b48-1407eb487201" is a video file approximately 41 seconds in length.  The video shows a prepubescent white female child performing oral sex on an adult male.  The female child is blindfolded.  The file was uploaded/shared via private chat message by jimbolives72_hfl on June 29, 2022 at 23:36:32 UTC from IP address 172.58.111.107 (T-Mobile USA).

8.     Kik also identified the device used by jimbolives72_hfl to access the Kik account. The reported device was a Samsung Galaxy S22, model SM-S906U.

9.     Utilizing open-source databases, investigators were able to locate an individual, employed by Hatchett Automotive in Wichita, by the name of Jimmy LYNN Jr. ("LYNN"), date of birth 09/XX/1972.

10.    On August 31, 2022, investigators obtained and executed a search warrant for Kik account by jimbolives72_hfl.  While reviewing the digital evidence provided by Kik in response to the search warrant, investigators located photographs of LYNN as well as videos and photographs of child pornography.

11.    On August 31, 2022, investigators obtained and executed a search warrant on AT&T for IP address 76.222.228.30 used on July 3, 2022 at 02:00:09 UTC.  AT&T identified LYNN as the subscriber with the above IP usage from May 24, 2022 to July 27, 2022.  AT&T also listed 1029 N Azure Cir as the subscriber address; phone number 316-303-2782; email address jimmyandaimee@hotmail.com.

12.    On August 31, 2022, investigators obtained and executed a search warrant on Cox Communications for IP address 174.71.138.186 used on July 1, 2022 at 21:44:30 UTC.  Cox Communications identified the subscriber as Hatchett Automotive, Hyundai of Wichita, Kansas. Investigators noted that this was the employer of LYNN.

13.     On September 29, 2022, investigators executed a search warrant to seize LYNN's Samsung Galaxy S22 (model SM-S906U) smartphone.  In a post-Miranda interview, LYNN admitted to obtaining and sharing images child pornography utilizing Kik and the mobile application Telegram.

14.     LYNN further stated his Samsung Galaxy S22 smartphone would contain a "folder" with additional child pornography.  LYNN did not expound on the type of "folder" investigators would find on his device.  LYNN provided written consent to investigators to search the above listed smartphone.

15.     On October 3, 2022, during examination of LYNN's smartphone, Det. Mackey observed chats via Telegram, a social media application, on the smartphone. The chat communications indicated LYNN had custody of and access to Minor Victim 1. The chat communications showed LYNN offering images of Minor Victim 1 for the purpose of receiving child pornography.

16.     In chat communications on August 24, 2020, LYNN sent images of a prepubescent minor child, Minor Victim 1, who was approximately 3 years old at the time, residing in Wichita, Kansas.  The images depicted and focused on the minor's exposed genitals. While the depiction of the minor showed a close-up of the child spreading the child's legs to expose the child's genitals, the depiction also captured the carpeting in the background.  The carpeting appeared to match that of LYNN's residence in Wichita, Kansas.

17.     On October 3, 2022, Det. Mackey undertook a second interview with LYNN. During this interview, LYNN admitted to taking the pictures of Minor Victim 1 and sending them via Telegram.

18.     At the time of this second interview, LYNN had in his possession a Samsung S20 smartphone.  LYNN stated that the Samsung S20 was an old smartphone he had reactivated after his first smartphone had been seized. In light of LYNN's previous admissions of historical involvements in child pornography activity, Det. Mackey seized the Samsung S20 to preserve evidence.

19.     During a review of NCMEC CTR's, investigators located CTR 83004248, a Kik report documenting the detection of a user uploading multiple files of apparent child pornography using their service. This report was submitted by Kik on or about November 20, 2020.

20.     Kik identified the user as:

    a.   Username:  jimboliveson

    b.   Email address:  jimbolives4ever@gmail.com

    c.   First name:  Johnny; and Last name:  Lee

21.     According to the Kik report, provided by NCMEC, approximately 38 files of apparent child pornography were uploaded to Kik from the above account.  The following are descriptions of several of those files:

    a.   File "1f7bd99a-273a-4e74-9949-aa6cf7694825" is video approximately 59 seconds in length.  The video shows an adult female performing oral sex on a prepubescent male child.

    b.   File "24b1ef84-50f9-4926-be85-128ad46f370b" is a video 51 seconds in length.  The focus of the video is on the male child's genitals.  The video shows an adult female's hand touching the genitals of a prepubescent male child.

22.     Kik identified the device used to access the account as a Samsung Galaxy S20, which is identical to the model seized by Det. Mackey during the second interview.

23.     On October 17, 2022, I applied for and was granted a federal search warrant for LYNN's Samsung Galaxy S20.  The search warrant was executed on October 17, 2022.

24.     During a review of the digital evidence obtained from the Samsung Galaxy S20 device, investigators observed well over 100 videos and images of apparent child sexual assault material on the device.  Investigators also observed these videos and images in a folder for the application Telegram.  Investigators also observed additional videos and images of apparent child sexual assault material in a folder for the dating and chat application "Triple".

25.     Forensic examination revealed Dropbox had been installed on LYNN's Samsung Galaxy S20 on or about September 29, 2021. Additionally, the application Telegram had been installed on the device. However, both applications were deleted prior to the device's seizure on October 3, 2022.

26.     Examination of LYNN's Samsung Galaxy S22 (the phone seized during the first interview) revealed an email titled "Security Alert" advising that Dropbox was linked to the Gmail account jimmyloveasaimee@gmail.com (**TARGET ACCOUNT**). This email was sent on September 29, 2021, which corresponds to the date of installation of the Dropbox application observed on the other Samsung Galaxy S20 phone. The Samsung Galaxy S22 contained additional emails sent from Dropbox relating to the account, spanning several months.

27.     Examination of LYNN's Samsung Galaxy S22 also revealed web history indicating LYNN was using his web browser to access Dropbox.

28.     Examination of LYNN's Samsung Galaxy S22 revealed Telegram chats between LYNN and other Telegram user where LYNN engaged in the trading and distribution of child sexual assault material. In some of these chats, LYNN sent the Telegram user a MEGA[1] URL. LYNN purports that the link will provide the Telegram user with access to an online file containing child exploitation material.  Despite providing the MEGA link, LYNN did not have the MEGA application installed on his device for online storage.

29.     While investigators observed that the application Dropbox had been installed on LYNN's Samsung S22 on June 2, 2022 and was still present on the device when it was seized, the phone did not contain the contents of LYNN's Dropbox. As noted above, investigators could discern that LYNN had set up a Dropbox user account using email "jimmylovesaimee@gmail.com" (**TARGET ACCOUNT**). Additionally, the Samsung Galaxy S22 phone included network usage artifacts showing that the Dropbox application had utilized the phone's data between June 30, 2022 to September 1, 2022.

30.     In light of the installation of Dropbox on two devices, during the period of time when LYNN was involved in the trafficking of child pornography, it is likely that the Dropbox account may contain additional evidence of child pornography, including images of Minor Victim 1.

## OVERVIEW OF DROPBOX

31.     Dropbox is a personal cloud storage service (sometimes referred to as an online backup service) that is frequently used for file sharing and collaboration, which allows users to share files, to include digital images, movies and folders with others across the Internet. Dropbox advertises itself as, "a free service that lets you bring your photos, docs, and videos anywhere and share them easily" (www.dropbox.com).

---

[1] MEGA is a cloud-based service which allows users to share files over the internet with other online users.  The type of files users can share using MEGA's cloud-based service include, but are not limited to digital images, movies, and folders.

32.     The Dropbox application is available for Windows, Macintosh and Linux desktop operating systems. There are also apps for iPhone, iPad, Android, and BlackBerry devices.

33.      To share a file, the user can generate a Uniform Resource Locator (URL) which is a web address for it from the Dropbox website and send it out so that others can view it. Folders can be shared by sending an invitation from the Dropbox website. Recipients that don't have Dropbox accounts will have to sign up to access the folder. Once a folder is shared, it will appear in the folder system for everyone who has access to it and all members will be able to make changes to files. All versions of files are saved.

34.     Dropbox provides a variety of on-line services, including online storage access, to the general public.  Dropbox allows subscribers to obtain accounts at the domain name www.dropbox.com.  Subscribers obtain a Dropbox account by registering with an email address. During the registration process, Dropbox asks subscribers to provide basic personal identifying information.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

35.     When the subscriber transfers a file to a Dropbox account, it is initiated at the user's computer, transferred via the Internet to the Dropbox servers, and then can automatically be synchronized and transmitted to other computers or electronic devices that have been registered with that Dropbox account.  This includes online storage in Dropbox servers.  If the subscriber does not delete the content, the files can remain on Dropbox servers indefinitely. Even if the subscriber deletes their account, it may continue to be available on the Dropbox servers for a certain period of time.

36.     Online storage providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account.  In addition, online storage providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

37.     In some cases, Dropbox account users will communicate directly with Dropbox about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Online storage providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

38.     This application seeks a warrant to search all responsive records and information under the control of Dropbox, a provider subject to the jurisdiction of this court, regardless of where Dropbox has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Dropbox's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

39.     As explained herein, information stored in connection with a personal cloud storage service account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with a personal cloud storage service  account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, stored communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by the provider can show how and when the account was accessed or used.  For example, as described below, electronic service providers typically log the Internet Protocol (IP) addresses from which users access the account along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in the account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS AND THE INTERNET

40.    Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who access online child sexual abuse and exploitation material via a website or via file-sharing:

a.   Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.   Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.   Such individuals almost always possess and maintain child pornographic material in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain those materials and child erotica for many years.

d.   Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e.   Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain contact information (e.g. online messaging accounts, email addresses, etc.) of individuals with whom they have been in contact and who share the same interests in child pornography.

f.   Such individuals prefer not to be without their child pornography for any prolonged period of time. This behavior has been documented by law

enforcement officers involved in the investigation of child pornography throughout the world.

g.  Individuals with a sexual interest in children often have had, or continue to maintain, multiple email and social media accounts. It is common for such individuals to control multiple email addresses in their attempts to remain anonymous or thwart law enforcement's efforts to investigate their illicit activity. Some individuals will create an account to imply that they are of a different age or sex depending on what their online intentions are, or to pose as a person a potential victim already knows. Some individuals with a sexual interest in children will open multiple accounts, whether they be for email, social media or remote storage, with common denominators that can be identified by the host company that operates that medium. For example, a person with a sexual interest in children may create and maintain several different email accounts but use the same email address as a "recovery" or "verifier" email account. Those individuals will use the same technique for new social media, email or virtual storage accounts when their original ones are compromised or shut down.

h.  Individuals with a sexual interest in children often maintain contact information from their trusted sources or like-minded individuals. They also block, cancel or "unfriend," contacts that they perceive pose a threat to their illegal activity or have not maintained good standing. For example, an individual with a sexual interest in children, but preferring children of a lower age range or ethnicity, might be blocked by another user who prefers older children or children of a different ethnicity. They may also block a person who threatens to contact a parent or the police about their online activity. Likewise, a victim of coercion, enticement and/or sexual exploitation may block a suspect who is attempting to further victimize them.

41.  Based upon my training, knowledge and experience in investigations related to child exploitation and from conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography and exploitation, I am aware that individuals who access paid subscription or free sites offering images and/or videos depicting child pornography do so for the purpose of downloading or saving these images to their hard drive or other storage media so that the images and videos can be added to their collection. I know that individuals involved in the distribution of child pornography also continue to obtain images of child pornography found elsewhere on the Internet such as newsgroups and websites, and via paid subscriptions, as well as their own "trophy photos" of sexual conquests involving the exploitation of children.

42.  Additionally, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a

sexual interest in children will oftentimes have a collection of child pornography and will ask children to take and send naked images of themselves that would constitute child pornography as well as child erotica.

43.     Furthermore, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes utilize social media and other online services to meet and communicate with minors. Individuals with a sexual interest in children know that social media allows for seemingly anonymous communication which they can then use to groom the minors and set up meetings in order to sexually exploit them.

44.     In my training and experience conducting child exploitation investigations, I am aware that persons who receive, possess, and distribute images of child pornography sometimes utilize email accounts and online "cloud" storage to correspond with other persons sharing similar interests; and that those persons sometimes utilize those email accounts and online "cloud" storage to receive, transmit and store images of child pornography.  More specifically, "cloud" storage can be utilized by child pornography distributors/possessors in an attempt to add a layer of anonymity to their actions, as well as attempt to conceal the trading and collecting of child exploitation material from law enforcement or the messaging applications themselves.

## CONCLUSION

45.     Based upon LYNN's usage of multiple mobile devices and multiple mobile applications, to access, receive, possess, and distribute child pornography; as well as LYNN's prior usage of cloud-based storage applications to access, possess, and distribute child pornography as detailed above; I believe there is probable cause that LYNN is operating a Dropbox account to possess, distribute, and trade in child pornography.  Furthermore, I believe that the information associated with **Dropbox User "jimmylovesaimee@gmail.com"**, stored at premises owned, maintained, controlled, or operated by Dropbox, contains evidence of violations of 18 U.S.C. § 2252A, and therefore respectfully request that a warrant issue for the search of the account described in Attachment A, for the search and seizure of the items more fully described in Attachment B and request that the Court issue the proposed search warrant.

46.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction," as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A)

and 2703(c)(1)(A). Specifically, the Court "a district court of the United States . . . that – has jurisdiction over the offense being investigated."

47.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Dropbox, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

Respectfully submitted,

Travis Putrah, Special Agent
Homeland Security Investigation

Sworn to and subscribed before me on this _4th_ day of November 2022.

The Honorable Kenneth G. Gale
United States Magistrate Judge

16

## <u>ATTACHMENT A</u>

### DESCRIPTION OF LOCATION TO BE SEARCHED

This warrant applies to information associated with Dropbox User

**jimmylovesaimee@gmail.com**

that is stored at premises owned, maintained, controlled, or operated by Dropbox, Inc.

("Dropbox"), an electronic service provider that accepts service of legal process at 1800 Owens

Street, Ste. 200, San Francisco, CA  94158.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Dropbox (the "Provider")**

> To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

> a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit card or bank account numbers);

> b.      The types of service utilized;

> c.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

> d.      All records pertaining to communications between Dropbox, Inc., and any person regarding the account, including contacts with support services and records of actions taken.

> e.      All user content created, uploaded, or shared by the account; and

f.      All images and videos in the account .

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2251 and 2252A; those violations involving user or users of each account or identifier listed in Attachment A, including information pertaining to the following matters:

a.      the production, distribution, receipt or possession of images of child pornography or images of obscene material; or correspondence in furtherance of the commission of offenses involving the production, distribution, receipt or possession of child pornography or obscene material.

b.      Information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

c.      All images depicting children engaging in sexually explicit conduct as defined in 18 U.S.C. § 2256.

## III.    Method of delivery

Dropbox shall disclose items seized pursuant to this search warrant by sending (notwithstanding Title 18, United States Code, Section 2252A, or similar statute or code) to the listed Special Agent.

19

Dropbox shall disclose responsive data, if any, by delivering it via Dropbox's Law Enforcement and Government Online Submission System.  Or on any digital media device via the United States Postal Service or commercial interstate carrier c/o Special Agent Travis Putrah, DHS-ICE-HSI, 555 N Woodlawn Street, Bldg 4, Suite 185, Wichita, Kansas, 67208.